1

2

3

4

5

6

7

8

9        IN THE UNITED STATES DISTRICT COURT

10       FOR THE EASTERN DISTRICT OF CALIFORNIA

11   PAUL LEWIS,

12            Petitioner,                No. CIV S-09-CV-0517 LKK CHS

13       vs.

14   MATTHEW CATE,

15            Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

16   _____/

17                    **I.  INTRODUCTION**

18            Petitioner, Paul Lewis, is a state prisoner proceeding *pro se* with a petition for writ

19   of *habeas corpus* pursuant to 28 U.S.C. § 2254.   Petitioner is currently serving a determinate

20   sentence of sixteen years following his plea of nolo contendre in Sacramento County Superior Court

21   to three counts of sexual penetration by force, two counts of oral copulation by force, six counts of

22   rape by force, and six counts of sodomy by force.   With this petition, Petitioner presents various

23   claims challenging the constitutionality of his conviction.

24                   **II.  CLAIMS FOR REVIEW**

25            Petitioner sets forth four grounds for relief in his pending petition.   Specifically,

26   Petitioner's claims are as follow, verbatim:

1

1    (1)    Violation of statute of limitation[s];

2    (2)    Violation of speedy trial rights;

3    (3)    Effective assistance of counsel; and

4    (4)    Violation of due process.

5    Based on a thorough review of the record and applicable law, it is recommended that

6 the petition be denied.

### III. BACKGROUND

8    The basic facts of Petitioner's crimes were summarized during Petitioner's change

9 of plea hearing as follows:

> In the county of Sacramento, on the dates alleged in the information, the Defendant approached the victim, Victoria, when she was only 19 years old as she walked down the street with her girlfriend.
>
> The Defendant invited her and her girlfriend to his residence, and the victim and her girlfriend complied. While spending a little bit of time at the residence, at some point in the evening the victim left. The Defendant followed her and offered her a ride home.
>
> Instead of giving her a ride home, the Defendant took her to an open field, where he began his attack on her.
>
> The Defendant told the victim that she would need to have sex with him. The victim said no. She told him that she was on her period, that she had a disease, and she tried to get out of the car, and he grabbed her hair to stop her.
>
> She kept saying no, th[en] she eventually told him she was pregnant. He said he didn't care and he would leave her in the field to die if she kept making excuses.
>
> He got into the back seat of his car. He kept a hold of her hair and used that to pull her into the back seat.
>
> He then put his hand down her pants and digitally penetrated her, looking for her tampon. He pulled his finger in and out of her vagina approximately three to four times. When he realized she had no tampon inside of her vagina, this enraged him.
>
> He told her to take off her pants. She said no. He started taking them off. She eventually struggled with the Defendant until he told her he had a gun in his trunk and would kill her if she did not stop fighting.

1

2

> He then told her, quote, to suck his dick or fuck him or she would not get out of the car alive.

3

4

5

> He then took her pants off of her body.  He grabbed her hair and forced his penis into her mouth and said, "Act like you enjoy it."  She turned her head side to side, and he slapped her face with his penis on both sides of her face.  He was hitting her about the head, telling her he was going to kill her.  He told her repeatedly to stop crying, stop resisting or he would kill her.

6

7

8

9

> He then penetrated her vagina.  Took his penis out of her vagina and penetrated her anus completely.  He then alternated back and forth between penetrating her vagina and her anus approximately six to seven times.  He then put his penis back into the victim's mouth and ejaculated.  The victim was later taken to the UC Davis Medical Center and had injuries to her vagina and her rectum.

10

(Lodged Doc. 6 at 9-11.)  Prior to trial, Petitioner entered a negotiated plea of no contest and, in

11

exchange, was sentenced to a determinate term of sixteen years imprisonment on two of the sexual

12

penetration by force charges.  He was also sentenced to a determinate term of six years

13

imprisonment on each of the remaining fifteen charges, to be served concurrently. Prior to accepting

14

Petitioner's plea, the trial court engaged in a detailed colloquy with Petitioner to ensure that he

15

understood his rights and was entering his plea by making a knowing, intelligent, and voluntary

16

waiver of those rights.

17

Petitioner did not appeal his convictions.  On December 4, 2007, Petitioner sought

18

habeas corpus relief in the Sacramento County Superior Court.  His petition was denied in a

19

reasoned opinion on January 14, 2008.  Petitioner subsequently sought relief in the California

20

Supreme Court.  That petition was denied without comment on January 28, 2009.  Petitioner filed

21

this federal petition for writ of habeas corpus on February 23, 2009.  Respondent filed a motion to

22

dismiss the petition as untimely and for failure to exhaust two of the claims.  Petitioner filed his

23

traverse on February 22, 2010, in which he contended that he was unaware that he had thirty to sixty

24

days to file a direct appeal.  He also alleged that he had, in fact, filed a petition for relief in the

25

California Court of Appeal on an unspecified date in January or February of 2008, but he received

26

no response from the appellate court.  In light of the allegations raised in Petitioner's traverse,

3

1  Respondent requested to withdraw his motion to dismiss on several grounds, including that the

2  interests of economy and efficiency might favor a resolution of Petitioner's claims on the merits.

3  Respondent's request was granted, and Respondent filed an answer on March 24, 2010.  Petitioner

4  filed a second traverse on April 9, 2010.

5  **IV.  APPLICABLE STANDARD OF HABEAS CORPUS REVIEW**

6  This case is governed by the provisions of the Antiterrorism and Effective Death

7  Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of *habeas corpus* filed after

8  its enactment on April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Jeffries v. Wood*, 114

9  F.3d 1484, 1499 (9th Cir. 1997).  Under AEDPA, an application for a writ of habeas corpus by a

10  person in custody under a judgment of a state court may be granted only for violations of the

11  Constitution or laws of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362,

12  375 n. 7 (2000).  Federal *habeas corpus* relief is not available for any claim decided on the merits

13  in state court proceedings unless the state court's adjudication of the claim:

14       (1)     resulted in a decision that was contrary to, or involved an
                 unreasonable application of, clearly established federal law,
15               as determined by the Supreme Court of the United States; or

16       (2)     resulted in a decision that was based on an unreasonable
                 determination of the facts in light of the evidence presented
17               in the State court proceeding.

18  28 U.S.C. § 2254(d).  *See also Penry v. Johnson*, 531 U.S. 782, 792-93 (2001); *Williams v. Taylor*,

19  529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).  This court

20  looks to the last reasoned state court decision in determining whether the law applied to a particular

21  claim by the state courts was contrary to the law set forth in the cases of the United States Supreme

22  Court or whether an unreasonable application of such law has occurred.  *Avila v. Galaza*, 297 F.3d

23  911, 918 (9th Cir. 2002).

24  **V.  DISCUSSION**

25  **A.     STATUTE OF LIMITATIONS**

26  Petitioner contends that the prosecution failed to take any action on his case until

4

1   August of 2004, almost nine years and four months after the date the victim reported to police that

2   she had been sexually assaulted by Petitioner.  The charges against Petitioner all arose from one

3   incident which took place on July 3, 1995.  A complaint charging Petitioner with three counts of

4   sexual penetration by force (CAL. PENAL § 289(a)(1)), two counts of oral copulation by force (CAL.

5   PENAL § 288a(c)(2)), six counts of rape by force (CAL. PENAL § 261(a)9(2)), and six counts of

6   sodomy by force (CAL. PENAL § 286(c)(2))) was filed on November 17, 2004.  According to

7   Petitioner, under section 800 of the California Penal Code, all of the charges he faced carried a

8   statute of limitations of six years, meaning that prosecution must have been initiated by July 3, 2001.

9   Consequently, Petitioner claims that the state of California no longer had jurisdiction to prosecute

10   him because the statute of limitations expired before he was charged with the above crimes.

11   Respondent alleges that Petitioner's claim is barred by *Tollett v. Henderson*, 411 U.S.

12   258 (1973), because Petitioner entered a plea of no contest[1] to each of the seventeen charges he

13   faced at trial.  *Tollett* bars a petitioner from challenging pre-plea constitutional errors, however the

14   United States Supreme Court has since recognized that the bar does not apply when the pre-plea

15   error is jurisdictional, and implicates the government's power to prosecute the defendant.  *United*

16   *States v. Johnston*, 199 F.3d 1015, 1019 n.3 (9th Cir. 1999).  Where the state of California is

17   precluded from charging and prosecuting a defendant by the federal constitution, federal law

18   requires that a conviction on that charge be set aside, even if the conviction was obtained pursuant

19   to a counseled plea of guilty.  *Blackledge v. Perry*, 417 U.S. 21, 30 (1974).  Thus, Petitioner may

20   challenge his conviction on statute of limitation grounds.

21   Petitioner's claim is, however, without merit.  Although Petitioner is correct that

22   section 800 of the California Penal Code provides that prosecution for each of the crimes with which

23   Petitioner was charged must commence within six years after the commission of the offense, the

24

25   [1] Under California law, the legal effect of a plea of nolo contendre, or no contest, to a crime punishable as a felony is the same as that of a guilty plea.  CAL. PENAL § 1016.  *See also People v.*

26   *West*, 3 Cal.3d 595, 601 (1970).  Accordingly, federal constitutional principles governing guilty pleas apply to Petitioner's claim.  *Miller v. McCarthy*, 607 F.2d 854, 856 (9th Cir. 1979).

statute of limitations was extended from six to ten years by an amended version of section 803(h)(1)

of the California Penal Code, which took effect on January 1, 2001.  This section provided that:

> Notwithstanding the limitation of time described in Section 800, the limitations period for commencing prosecution for a felony offense described in subparagraph (A) of paragraph (2) of subdivision (a) of Section 290, where the limitations period set forth in Section 800 has not expired as of January 1, 2001 . . . , shall be 10 years from the commission of the offense . . . .

CAL. PENAL § 803(h)(1) (2001).[2]  All of the crimes with which Petitioner was charged were

enumerated in the 2001 version of section 290(a)(2)(A) of the Penal Code.  As Petitioner notes in

his petition, the original six year statute of limitations for his crimes would have expired on July 3,

2001.  Thus, the statute of limitations had not yet run at the time the Penal Code was amended on

January 1, 2001 to extend the limitations periods for Petitioner's crimes from six to ten years.  While

the United States Supreme Court has held that extending the limitations period of an offense is

unconstitutional in cases where the limitations period has already expired, the Court has also

expressly noted that its holding did not "prevent the State from extending time limits for future

offenses, or for prosecutions not yet time barred." *Stogner v. California*, 539 U.S. 607, 632 (2003).

Because the limitations period for the charged offenses in Petitioner's case had not yet expired when

section 803(h)(1) of the Penal Code became effective, the extended limitations period could properly

be applied to Petitioner without violating his constitutional rights.  *See People v. Hollie*, 180

Cal.App.4th 1262 (2010) (Extension of applicable statute of limitations from six years to ten years

for defendant's crimes of rape and sexual penetration with a foreign object was not unconstitutional

where the ten year statute of limitations became effective before the six year limitations period

expired.); *In re White*, 163 Cal.App.4th 1576 (2008) (Defendant's constitutional rights were not

violated by application of ten year statute of limitations for rape where limitations period was only

---

[2] The California Penal Code has been amended several times since 2001.  The fundamental law, however, has remained the same, although relevant code numbers have changed.  Under the current version of the Penal Code, section 801.1(b) provides for a ten year statute of limitations for crimes enumerated in section 290(c), which continues to include all crimes with which Petitioner was charged.

6

1    six years at the time the crime was committed because the limitations period was extended before

2    expiration of the six year period.); *People v. Superior Court*, 116 Cal.App.4th 1192 (2004) (Statute

3    allowing filing of otherwise time-barred charge was a permissible extension of, rather than

4    unconstitutional revival of, statute of limitations, as applied to defendant for whom original six-year

5    limitations period was not expired when statute became effective.).  Thus, under the new limitations

6    period, prosecution against Petitioner was required to be initiated by July 3, 2005.   Because the

7    complaint charging Petitioner was filed on November 17, 2004, the state of California was not time-

8    barred from prosecuting Petitioner for the charged crimes.  Petitioner is not entitled to federal habeas

9    corpus relief on this claim.

10    **B.**      **SPEEDY TRIAL**

11         Petitioner next claims that he was denied his Sixth Amendment right to a speedy trial

12    because the victim reported the crimes on July 3, 1995, but no action was taken to pursue a case

13    against Petitioner until November 18, 2004, nine years and four months later.  Petitioner argues that

14    this delay inhibited his ability to prepare and present his defense.

15         The Sixth Amendment to the United States Constitution provides that "[i]n all

16    criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . ."  U.S.

17    CONST., AMEND. VI.  In assessing a speedy trial claim, four factors are considered: "whether delay

18    before trial was uncommonly long, whether the government or the criminal defendant is more to

19    blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and

20    whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651

21    (1992) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).  *See also McNeely v. Lanas*, 336 F.3d

22    822, 826 (9th Cir. 2003); *United States v. Valentine*, 783 F.2d 1413, 1417 (9th Cir. 1986).  No one

23    of these four factors alone is either necessary or sufficient to support a finding that there has been

24    a deprivation of the constitutional right to a speedy trial.  *McNeely*, 336 F.3d at 826.  Rather, the

25    various factors are related and must be considered together. *Barker*, 407 U.S. at 533.  However, "no

26    showing of prejudice is required when the delay is great and attributable to the government." *United*

*States v. Shell*, 974 F.2d 1035, 1036 (9th Cir. 1992).  *See also Doggett*, 505 U.S. at 651 (eight and one-half year delay between indictment and trial, six months of which were attributable to the government's negligence, violated a defendant's constitutional right to a speedy trial even though he could not demonstrate the delay impaired his ability to mount a successful defense).

The United States Supreme Court has observed that:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.

*Barker*, 407 U.S. at 530.  In this regard, depending on the nature of the charges, courts have generally found post-accusation delay "presumptively prejudicial" when it begins to approach one year.  *Doggett*, 505 U.S. at 652 n.1.  *See also McNeely*, 336 F.3d at 826 (three-year delay was presumptively prejudicial); *United States v. Gregory*, 322 F.3d 1157, 1162 (9th Cir. 2003) (22-month delay between first superseding indictment and trial date was presumptively prejudicial but did not weigh heavily in defendant's favor because it was not excessively long); *United States v. Aguirre*, 994 F.2d 1454, 1457 (1993) (finding that "a five year delay is long enough to trigger a further look," but nonetheless concluding that even the five-year delay in that case did not deprive defendant of his constitutional right to a speedy trial when all the *Barker v. Wingo* factors were balanced).

Here, Petitioner claims that although the victim reported the crimes as well as, *inter alia*, Petitioner's identity, address, and license plate number to law enforcement in 1995, the prosecution against him did not commence for over nine years.  Petitioner argues that he has been prejudiced by the delay in several ways, including that the passage of time has damaged his ability to prepare and present his defense to the charges, and that he was exposed to greater punishment due to felony convictions incurred during the period of time between when the crime was committed in 1995 and his arrest in 2004.  Even if these claims were true, Petitioner waived his right to assert a

1   violation of his speedy trial rights by pleading no contest to the charges against him.[3]

2   　　　The law is clear that a petitioner may not raise claims of deprivation of his
3   constitutional rights that occurred prior to his plea.  "When a criminal defendant has solemnly
4   admitted in open court that he is in fact guilty of the offense with which he is charged, he may not
5   thereafter raise independent claims relating to the deprivation of constitutional rights that occurred
6   prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267.  *See also McMann v. Richardson*, 397
7   U.S. 759, 770-71 (1970); *Moran v. Godinez*, 57 F.3d 690, 700 (9th Cir. 1994) ("As a general rule,
8   one who voluntarily pleads guilty to a criminal charge may not subsequently seek federal habeas
9   relief on the basis of pre-plea constitutional violations."); *Ortberg v. Moody*, 961 F.2d 135, 137 (9th
10  Cir. 1992) ("[P]etitioner's nolo contendere plea precludes him from challenging alleged
11  constitutional violations that occurred prior to the entry of that plea."); *Hudson v. Moran*, 760 F.2d
12  1027, 1029-30 (9th Cir. 1985) (A voluntary and intelligent guilty plea precludes federal habeas relief
13  based upon "independent claims" of pre-plea constitutional violations.).  Under these circumstances,
14  a petitioner may attack only the voluntary and intelligent nature of his no contest plea. *Ortberg*, 961
15  F.2d at 137.

16  　　　Petitioner's speedy trial claim is an independent claim relating to the alleged
17  deprivation of a constitutional right that occurred prior to the entry of his no contest plea.  Thus, this
18  claim has been waived and is not cognizable in this federal habeas corpus action. *See United States*
19  *v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992).  Accordingly, Petitioner is not entitled to relief on this
20  claim.

21  **C.   EFFECTIVE ASSISTANCE OF COUNSEL**

22  　　　Petitioner claims that he was denied his right to effective assistance of counsel when
23  his trial attorney: (1) failed to subpoena investigating detectives to testify as to the delay in
24  prosecution; and (2) failed to argue that the trial court should not have stated that Petitioner could

25

26  　　　[3] As noted in footnote one, above,  the legal effect of a no contest plea  to a crime punishable
     as a felony is the same as that of a guilty plea.

1  be subject to four or five years of parole after serving his sentence.

2  　　　　The Sixth Amendment to the United States Constitution guarantees the effective

3  assistance of counsel.  U.S. CONST., AMEND. VI.  The United States Supreme Court set forth the test

4  for determining whether counsel's assistance was ineffective in *Strickland v. Washington*, 466 U.S.

5  668 (1984).  To support a claim that counsel's performance was ineffective, a petitioner must first

6  show that, considering all the circumstances, counsel's performance fell below an objective standard

7  of reasonableness.  *Id* at 687-88.  After a petitioner identifies the acts or omissions that are alleged

8  not to have been the result of reasonable professional judgment, the court must determine whether,

9  in light of all the circumstances, the identified acts or omissions were outside the wide range of

10  professionally competent assistance.  *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

11  Second, a petitioner must establish that he was prejudiced by counsel's deficient performance.

12  *Strickland*, 466 U.S. at 693-694.  In order to prove prejudice in the context of a guilty plea, a

13  petitioner must demonstrate "that there is a reasonable probability that, but for counsel's errors, he

14  would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S.

15  52, 59 (1985).  A reasonable probability is a "probability sufficient to undermine confidence in the

16  outcome."  *Strickland*, 466 U.S. at 694.  *See also Williams v. Taylor*, 529 U.S. 362, 391-92 (2000);

17  *Laboa v. Calderon*, 224 F.3d 972, 981 (9th Cir. 2000).

18  　　　　A reviewing court "need not determine whether counsel's performance was deficient

19  before examining the prejudice suffered by the defendant as a result of the alleged deficiencies....If

20  it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice...that

21  course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*,

22  466 U.S. at 697).  In assessing an ineffective assistance of counsel claim, "[t]here is a strong

23  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

24  *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  There is, in addition, a strong presumption that

25  counsel "exercised acceptable professional judgment in all significant decisions made."  *Hughes v.*

26  *Borg*, 898 F.2d 695, 702 (9th Cir. 1990) (citing *Strickland*, 466 U.S. at 689).  Thus, a reasonable

1  tactical decision by counsel with which the defendant disagrees cannot form the basis of an

2  ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 689. The court does not consider

3  whether another lawyer with the benefit of hindsight would have acted differently than trial counsel.

4  *Id*. Instead, the court considers whether counsel made errors so serious that counsel failed to

5  function as guaranteed by the Sixth Amendment. *Id*. at 687.

6          With regard to Petitioner's first claim that his trial counsel rendered ineffective

7  assistance by failing to subpoena investigating detectives to testify concerning the delay in

8  prosecution, this claim, like Petitioner's speedy trial claim, above, relates to an alleged deprivation

9  of a constitutional right that occurred prior to the entry of Petitioner's no contest plea. Accordingly,

10  Petitioner waived this claim, and it is thus not cognizable in this federal habeas corpus action. *See*

11  *Bohn*, 956 F.2d at 209. Petitioner is, therefore, not entitled to relief on this claim.

12          Petitioner's second ineffective assistance of counsel claim, however, implicates a

13  constitutional right allegedly deprived after the initial entry of his no contest plea, and has thus not

14  been waived. The Sacramento County Superior Court considered and rejected Petitioner's second

15  ineffective assistance of counsel claim, explaining its reasoning as follows:

16          To show constitutionally inadequate assistance of counsel, a
        defendant must show that counsel's representation fell below an
17          objective standard and that counsel's failure was prejudicial to the
        defendant. (In re Alvernaz (1992) 2 Cal.4th 924, 937.) A petition for
18          writ of habeas corpus cannot test the legality of some future action.
        (Ex parte Drake (1951) 38 Ca.2d 195, 198.)

19
        Petitioner complains that he received ineffective assistance of counsel
20          because counsel should have objected when he was "sentenced" to
        five years of parole. Petitioner argues that the length of parole should
21          be governed by the law in effect in 1995, when the crime occurred.
        However, Petitioner was not "sentenced" to parole. He was advised
22          that he would be placed on parole. Since he will not be placed on
        parole until he completes his 16-year sentence, the challenge to the
23          length of that future parole is premature.

24  (Lodged Doc. 3 at 2.) The state court's decision is not contrary to or an unreasonable application

25  of clearly established federal law because Petitioner has failed to demonstrate the second prong of

26  *Strickland*, that he suffered prejudice as a result of counsel's alleged error in failing to argue that any

11

1  term of parole he is to receive in the future must comply with the law in effect in 1995, when the

2  commitment offense occurred.  In order to prevail on this claim, Petitioner must demonstrate that,

3  but for counsel's alleged error, he would not have chosen to enter a no contest plea but instead

4  would have chosen to proceed to trial.  Petitioner's conclusory statement, buried in his "Motion To

5  Respond To The Respondent [sic] answers," docketed on April 9, 2010, that "petitioner does show,

6  [sic] that he would not have plea [sic] no contest plea [sic] in the absence of the alleged errors" is

7  speculative and without support in the record.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994)

8  ("Conclusory allegations which are not supported by a statement of specific facts do not warrant

9  habeas relief.").  Indeed, prior to entering his no contest plea, the trial court engaged Petitioner in

10 a colloquy to ensure that he understood his rights, but nonetheless wished to waive them and enter

11 a plea of no contest.  Petitioner confirmed that he did.  (*See* Lodged Doc. 6 at 3-9; 11-17).  During

12 Petitioner's sentencing hearing, which took place approximately two months after he entered his

13 plea, Petitioner informed the court that he had a question regarding the period of parole to which he

14 would be subject following the completion of his incarceration as follows:

15        THE DEFENDANT:  Yes, sir, except for just one question that I have.
          I asked [my attorney] but - - he really can't answer for me, but I just
16        wanted to ask you.

17        THE COURT:  Why don't I let you do this - -

18        [DEFENSE ATTORNEY]: It's a question of parole time, Your Honor.
          How long will he be on parole?  My understanding is he will be on
19        parole for at least four or five years, although Mr. Lewis states that at
          the time of the offense, parole would have been three years.  And I do
20        believe this is an issue that would be feathered out at classification
          without question.  I don't know the right answer.

21
          THE COURT: I think that it is a perfectly fair question to ask, and I
22        think the truth is it's not possible to know.  At this time, if I were to
          answer the question, I believe it would be in the nature of five years.
23        Could it be shorter?  Perhaps.  And if the law changes between now
          and then, it's anybody's guess.  But I think at this point if you were
24        asking the best answer that I can give or [ask] any attorney to give
          you,  it would be four or five years.  Now that's not to say that you
25        might not be right that it is shorter.  So, can you live with that answer,
          and do you want to go ahead and proceed knowing that I can't give
26        you a definitive answer to that question?

1    THE DEFENDANT: Yes, sir.

2    (Lodged Doc. 7 at 8-9). Representations by a defendant during a plea hearing, as well as any

3    findings made by a judge accepting the plea, constitute "a formidable barrier in any subsequent

4    collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). "Solemn declarations

5    in open court carry a strong presumption of verity." *Id*. Petitioner's confirmation that he wished

6    to proceed with his no contest plea, despite both the trial court and his attorney admitting that his

7    question regarding parole could not be answered at that time, are thus presumed to have been

8    truthful, and Petitioner has not directed the court to any evidence in the record suggesting otherwise.

9    Because Petitioner has failed to demonstrate prejudice on his second ineffective assistance of

10   counsel claim, that but for counsel's alleged error he would not have entered his plea but would have

11   insisted on going to trial, he is not entitled to habeas corpus relief on that claim.

12   **D.    DUE PROCESS**

13   Petitioner claims that the prosecution intentionally or negligently delayed to file its

14   criminal case against him, in violation of due process right to a fair trial.  According to Petitioner,

15   the delay prejudiced his ability to prepare his own defense.

16   As with Petitioner's speedy trial claim and his first ineffective assistance of counsel

17   claim, Petitioner waived this right as a result of his no contest plea and it is thus not cognizable in

18   the federal habeas corpus action. *See Bohn*, 946 F.2d at 209.  Petitioner is, therefore, not entitled

19   to relief on this claim.

20   **VI.  CONCLUSION**

21   IT IS RECOMMENDED that Petitioner's petition for writ of *habeas corpus* be

22   denied.  These findings and recommendations are submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days

24   after being served with these findings and recommendations, any party may file written objections

25   with the court and serve a copy on all parties.  Such a document should be captioned "Objections

26   to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served

13

1   and filed within seven days after service of the objections.  Failure to file objections within the

2   specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d

3   449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In any objections he elects

4   to file, petitioner may address whether a certificate of appealability should issue in the event that he

5   elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing

6   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters

7   a final order adverse to the applicant).

8   DATED: January 10, 2011

9

10                                                                  *Charlene H. Sorrentino*

                                                                    CHARLENE H. SORRENTINO
11                                                                  UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26